| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Jack Shaw,

                      Plaintiff,

v.

Metropolitan Council,

                      Defendant.

Civil File No. _____
Case Type: 7 Employment

**SUMMONS**

The State of Minnesota to the Above-Named Defendant:

1.     **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at: 1050 UBS Plaza, 444 Cedar Street, St. Paul, MN 55101.

3.    **YOU MUST RESPOND TO EACH CLAIM**. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS**. If you do not Answer within 20 days, you will lose this case. You will not get to

tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

    5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

    6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: December 8, 2020

*s/Celeste E. Culberth*
Celeste E. Culberth (228187)
Leslie L. Lienemann (230194)
**CULBERTH & LIENEMANN, LLP**
1050 UBS Plaza
444 Cedar Street
St. Paul, MN 55101
(651) 290-9300--Telephone
(651) 290-9305--Facsimile

**ATTORNEYS FOR PLAINTIFF**

## ACKNOWLEDGMENT

The maker of this pleading hereby acknowledges that sanctions may be awarded under Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated:  December 8, 2020          *s/Celeste E. Culberth*
                                  Celeste E. Culberth

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| Jack Shaw, | Civil File No. _____ |
|---|---|
| | Case Type: 7 Employment |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| Metropolitan Council, | |
| Defendant. | |

For his Complaint against defendant above-named, Plaintiff alleges as follows:

1. Plaintiff is a United States Veteran with a disability, residing in the County of Washington.

2. Defendant Metropolitan Counsel is a public corporation and political subdivision under the state. Metro Transit is a division of Metropolitan Counsel.

3. Plaintiff is employed by the Metropolitan Council at Metro Transit, working at the Blue Line Maintenance facility located at 1810 Franklin Avenue, Minneapolis, Minnesota in Hennepin County.

4. On or about January 15, 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission, cross filed with the Minnesota Department of Human Rights.

5. Plaintiff received a notice of right to sue dated September 10, 2020 and timely commences this instant action.

## Background Facts

6. In or about June 1985, Defendant hired Plaintiff into the position of Vault Puller.

7. In 2013, Defendant promoted Plaintiff to the position of Maintenance Supervisor.

1

8. Plaintiff is a disabled war veteran. In 2004, he received permanent injuries from mortar attack while serving in Iraq. He had to have 4 total left knee replacements. He also has been diagnosed with Post Traumatic Stress Disorder (PTSD).

9. In 2004, after the first surgery, Plaintiff reported to his Director of Rail Maintenance that his physician had prescribed Vicodin for his pain management.

10. Since that time, Plaintiff has continuously been prescribed Vicodin by his physician for pain management. Plaintiff also disclosed that he was on medication for PTSD.

11. No federal or state safety rule or regulation prohibits Plaintiff from working in his current role and taking the medications he has been prescribed by his physician.

12. Plaintiff requested and was granted accommodations related to his disabilities, including but not limited to modified work hours to accommodate the timing of taking his medication.

13. In 2019, Defendant's manager requested that Plaintiff move to a location in Minneapolis.

14. Plaintiff met with the manager and the Director of Maintenance regarding the requested move.

15. Both the manager and the Director of Maintenance agreed that if Plaintiff would move to the Minneapolis location, he could maintain his accommodation for modified work schedule, working from 4am to 12pm, and granted the accommodation that his office would be close to the body shop.

16. After moving to the Minneapolis location, Plaintiff developed a staph infection in his knee and had to take leave from work for a few weeks.

17. When Plaintiff returned to work, Defendant took away the granted accommodations, modifying his work schedule to 6am – 2pm and designated his office further away from the body shop.

18. On or about June 16, 2019, Plaintiff requested workplace accommodation to work from 4am – 12pm and to return to his former position at Saint Paul's green line. The position was open at the time of this request.

19. At this time, the Defendant had a practice of moving supervisors to another supervisor slot without having to apply or interview for the position.

20. Defendant deviated from its practice and required Plaintiff to apply and interview for the Saint Paul green line position he had just held months prior.

21. Plaintiff declined to interview for the position, believing that the interview would be futile.

22. On or about June 19, 2019, the Occupational Health (OCC Health) Department set up a meeting with the Director of Maintenance, Acting Manager Mike Rood, Deborah Aebi from OCC Health and Plaintiff.

23. Defendant instructed Plaintiff to fill out a new workplace accommodation form because Defendant would not grant the accommodation to go to his former position at the Saint Paul Green Line. Plaintiff told Defendant that he did not withdraw his request for the request for transfer.

24. In response, Aebi told Plaintiff that he must have his physician fill out the proper Medical Authorization form for all of his over the counter and prescription medications. The form she provided to him limited the disclosure request to "only those prescribed and over the counter drugs that are mood altering and may impact job performance."

25. On or about September 20, 2019, Plaintiff submitted a workability statement from his orthopedic physician.

26. Defendant told Plaintiff the orthopedic physician's workability statement was insufficient and needed clarification.

27. On or about October 9, 2019, Plaintiff submitted a note from his primary physician supporting the accommodation for the modified work schedule.

28. Defendant told Plaintiff that primary physician's medical support for the accommodation was insufficient because Defendant needed a Department of Transportation (DOT) doctor, due to training a DOT doctor would have in this area.

29. On or about October 10, 2019, Defendant required Plaintiff to provide medical documentation pertaining to his medication.

30. On or about October 11, 2019, despite the fact that the Metropolitan Council Proper Medical Authorization for Prescription and Over the Counter Drug form limited the disclosure to "only those prescribed and over the counter drugs that are mood altering and may impact job performance," Defendant required Plaintiff to disclose "all medication" he was "currently taking, regardless of the time of day [he] take[s] the medication."

31. Defendant had a Federal Transit Administration Safety Sensitive Drug and Alcohol Program Policy that addressed the use and disclosure of medications.

32. The policy prohibits marijuana, amphetamines, opiates, phencyclidine, cocaine and another of their metabolites.

33. On October 24, 2019, the OCC Health manager telephoned Plaintiff and told him he could not go back to work as long as he was taking his pain medication and PTSD medication.

34. Plaintiff replied that he would stop taking all of his medication so he could continue to work.

35. Plaintiff discontinued taking any of his pain and PTSD medications.

36. The OCC Health manager told Plaintiff he could not return to work.

37. After the telephone call, Plaintiff reported discrimination and harassment with the EEO Consultant for Defendant.

38. On October 25, 2019, Plaintiff submitted the medical authorization form from a DOT doctor stating he could work while taking his medication.

39. Defendant told Plaintiff the October 25, 2019 form was insufficient.

40. On October 29, 2019, Plaintiff submitted a medical authorization form from his Veterans Administration doctor stating that Plaintiff could take his PTSD medication while at work.

41. He told the OCC Health manager that he had stopped taking any medications on October 23, 2019.

42. On October 31, 2019, Plaintiff met with the Deputy Operation Officer of Light Rail. He called Aebi of OCC Health inquiring about what was preventing Plaintiff from being able to return to work.

43. Aebi stated that Plaintiff needed a letter explaining work restrictions. Aebi told the Deputy Operation Officer of Light Rail that Plaintiff could return to work while waiting for the letter on the restrictions.

44. On November 1, 2019, Plaintiff returned to work.

45. On November 1, 2019, Aebi emailed to Plaintiff that she needed a letter from Plaintiff' health care provider to document the medications he was using and that he would be sent to an OCC health DOT doctor. She also emailed Plaintiff accusing him of being non-compliant regarding medication use prohibited by the METC Drug and Alcohol policy. She told him he was not allowed to return to work.

46. Plaintiff's manager then called him and told him he could not go back to work until he was cleared by OCC Health.

47. On November 2, 2019, Plaintiff emailed his manager and asked if he could return to work. He manager told him he could not come to work.

48. On November 4, 2019, Plaintiff's physician stated that Plaintiff was stable on his PTSD medications but confirmed he would discontinue his use of the medications based on Defendant's occupational health requirements.

49. On November 6, 2019, Plaintiff attended a fitness for duty examination. The doctor gave Plaintiff a workability report stating that he could return to work on November 6, 2019.

50. On November 6, 2019, Plaintiff asked his manager if he could go back to work. His manager told him he needed clearance from OCC health.

51. On November 13, 2019, Defendant still did not allow Plaintiff to return to work and refused to engage in the interactive process with Plaintiff regarding his ability to perform his job with or without accommodation until it had obtained additional information from Plaintiff's physician regarding "work restrictions."

52. In or about January 2020, Plaintiff was finally able to return to work.

53. Due to the loss of his ability to take his pain and PTSD medication, Plaintiff suffered great physical pain, emotional pain and anxiety and had to take extended leave from work.

54. Plaintiff began to take his pain and PTSD medication again to alleviate his physical and emotional symptoms from his disability.

55. By September 17, 2020, Defendant determined that Plaintiff could safely work while taking his pain and PTSD medication.

56. In October 2020, Plaintiff was able to return to work.

## COUNT ONE

### (Disability Discrimination – MHRA)

57. Plaintiff realleges the allegations contained in the preceding paragraphs into this count as though they are fully restated herein.

58. Plaintiff is a qualified disabled individual as defined under the Minnesota Human Rights Act, Minn. Stat. §363A.01 *et seq*.

59. Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation and had been performing the job without accommodation for many years. Plaintiff requested reasonable accommodations due to his disability.

60. Plaintiff was treated differently and less favorably than individuals not of his protected class and the Defendant failed to make needed reasonable accommodations, resulting in adverse treatment of the Plaintiff.

61. The Defendant failed to engage in the interactive process, failed to accommodate, and unreasonably removed him from the workplace.

62. The Defendant unreasonably removed Plaintiff from the workplace due to his use of medications for his disability.

63. As a result, the Defendant violated the Minnesota Human Rights Act.

64. As result of Defendant's illegal discrimination, Plaintiff has suffered loss of pay, severe emotional anguish resulting in mental and physical illness and loss of reputation. As a result of this illegal discrimination, Plaintiff has incurred and continues to incur, attorneys' fees and costs.

## COUNT TWO

### (Disability Discrimination – ADA)

65. Plaintiff realleges the allegations contained in the preceding paragraphs into this count as though they are fully restated herein.

66. Plaintiff is a qualified disabled individual as defined under the Americans with Disabilities Act of 1990, as amended.

67. Plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation. Plaintiff requested reasonable accommodations due to his disability.

68. Plaintiff was treated differently and less favorably than individuals not of his protected class and the Defendant failed to make needed reasonable accommodations, resulting in adverse treatment of the Plaintiff.

69. The Defendant failed to engage in the interactive process, failed to accommodate, and unreasonably removed him from the workplace.

70. The Defendant unreasonably removed Plaintiff from the workplace due to his use of medications for his disability.

71. As a result, the Defendant violated the Americans with Disabilities Act of 1990, as amended.

72. As result of Defendant's illegal discrimination, Plaintiff has suffered loss of pay, severe emotional anguish resulting in mental and physical illness and loss of reputation. As a result of this illegal discrimination, Plaintiff has incurred and continues to incur, attorneys' fees and costs.

## COUNT THREE

### (Reprisal – MHRA)

73. Plaintiff realleges the allegations contained in the preceding paragraphs into this count as though they are fully restated herein.

74. Plaintiff engaged in protected conduct, including opposing discrimination and retaliation, filing informal and formal MHRA complaints and requesting reasonable accommodation.

75. Defendant took action in reprisal against him by failing to transfer him to an open position that he had previously held, lowered marks on his performance review for the first time in his career with organization, unreasonably prohibiting him from taking his medications for his disability, unreasonably removing him from the workplace.

76. As a result, the Defendant took actions against him, including but not limited to treating Plaintiff differently and less favorably than individuals who did not engage in protected conduct, failing to make reasonable accommodations, and removing Plaintiff from the workplace and from his regular job.

77. Defendant has violated the Minnesota Human Rights Act, Minn. Stat. §363A.15, by engaging in reprisal against Plaintiff for opposing a practice forbidden by the Act and for filing a charge of discrimination and retaliation.

78. As a result of this reprisal, Plaintiff suffered severe emotional anguish resulting in mental and physical illness, and loss of pay and loss of reputation.

79. As a result of this illegal discrimination, Plaintiff has incurred and continues to incur, attorneys' fees and costs.

## COUNT FOUR

### (Retaliation – ADA)

80. Plaintiff realleges the allegations contained in the preceding paragraphs into this count as though they are fully restated herein.

81. Plaintiff engaged in protected conduct, including opposing discrimination and retaliation, filing informal and formal complaints and requesting reasonable accommodation.

82. Defendant took action in reprisal against him by failing to transfer him to an open position that he had previously held, lowered marks on his performance review for the first time in his career with organization, unreasonably prohibiting him from taking his medications for his disability, unreasonably removing him from the workplace.

83. As a result, the Defendant took actions against him, including but not limited to treating Plaintiff differently and less favorably than individuals who did not engage in protected conduct, failing to make reasonable accommodations, removing Plaintiff from the workplace.

84. Defendant has violated the Americans with Disabilities Act of 1990, as amended, by engaging in reprisal against Plaintiff for opposing a practice forbidden by the Act and for filing a charge of discrimination and retaliation.

85. As a result of this reprisal, Plaintiff suffered severe emotional anguish resulting in mental and physical illness, and loss of pay and loss of reputation.

86. As a result of this illegal discrimination, Plaintiff has incurred and continues to incur, attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a jury on all claims

## PRAYER FOR RELIEF

Plaintiff demands the judgment be entered in his favor and prays the court to award the following relief:

1. Finding that Defendant discriminated against her and retaliated against her, in violation of the Minnesota Human Rights Act, Minn. Stat. §363A.01 *et seq.*;

2. Finding that the Defendant discriminated against her and retaliated against her, in violation of the Americans with Disabilities Act of 1990, as amended;

3. Awarding her three times the amount of her actual damages, pursuant to Minn. Stat. §§363A.29, Subd. 4 and 363A.33, Subd. 6 in an amount in excess of $50,000.00;

4. Awarding her damages for pay loss and emotional anguish, pursuant to Minn. Stat. §§363A.29, Subd. 4 and 363A.33 Subd. 6 in an amount in excess of $50,000.00;

5. Awarding her punitive damages under the Minnesota Human Rights Act;

6. Awarding her damages for pay loss and emotional anguish, pursuant to the Americans with Disabilities Act of 1990, as amended;

7. Awarding a Civil Penalty to the State, pursuant to Minn. Stat. §§363A.29, Subd. 4 and 363A.33 Subd. 6 in an amount in excess of $50,000;

8. Awarding her attorney fees and costs pursuant to Minn. Stat. §363A.33 Subd. 7 and the Americans with Disabilities Act of 1990, as amended; and

9. Such other relief as the court deems just.

Dated:  December 8, 2020        *s/Celeste E. Culberth*
                                Celeste E. Culberth (228187)
                                Leslie L. Lienemann (230194)
                                **CULBERTH & LIENEMANN, LLP**
                                1050 UBS Plaza
                                444 Cedar Street
                                St. Paul, MN 55101
                                (651) 290-9300--Telephone
                                (651) 290-9305--Facsimile

                                **ATTORNEYS FOR PLAINTIFF**

## ACKNOWLEDGMENT

The maker of this pleading hereby acknowledges that sanctions may be awarded under Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: December 8, 2020                     *s/Celeste E. Culberth*
                                            Celeste E. Culberth